**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: July 28 2020**

_____
Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 18-30927 |
| | ) | |
| Brian R. Somogye | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Adv. Pro. No. 18-03037 |
| Jim Ott and Linda L. Ott, | ) | |
| | ) | Hon. Mary Ann Whipple |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Brian R. Somogye, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF DECISION ON MOTION TO EXTEND DEADLINE TO FILE APPEAL

This adversary proceeding is before the Court for decision on Plaintiffs Jim and Linda Otts' ("Plaintiffs" or "Otts") Motion to Extend Time to File Notice of Appeal [Doc. # 50] ("Motion"), Defendant Brian Somogye's ("Defendant" or "Somogye") objection to the Motion [Doc. # 52] and Plaintiffs' reply [Doc. # 53]. The Court entered judgment against Plaintiffs on their complaint on

March 30, 2020, making April 13, 2020, the deadline to file a notice of appeal. Fed. R. Bank. P. 8002(a)(1). Plaintiffs missed the deadline. Now they ask the Court to extend the time for filing a notice of appeal under Bankruptcy Rule 8002(d)(1)(B), which requires a showing of excusable neglect. Fed. R. Bankr. P. 8002(d)(1)(B).

The district court has jurisdiction over Defendant=s underlying Chapter 7 bankruptcy case and all civil proceedings in it arising under Title 11, including this adversary proceeding. 28 U.S.C. ' 1334(a) and (b). The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this Court for decision. 28 U.S.C. ' 157(a) and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of particular debts are core proceedings that this Court may hear and determine. 28 U.S.C. ' 157(b)(1) and (b)(2)(I).

For the reasons that follow, the Motion will be denied.

## PROCEDURAL BACKGROUND

Plaintiffs' complaint against Defendant sought a determination that a debt he owed them based on a state court judgment in their favor against him is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because of fraud. After a bench trial on the merits, the Court entered judgment on the dischargeablity complaint against Plaintiffs and in favor of Defendant. [Doc. # 45].[1] At trial, two lawyers from separate law practices represented Plaintiffs. The judgment, along with the Court's separate memorandum of decision setting forth its findings of fact and conclusions of law, [Doc. # 44], were both docketed by the Clerk on March 30, 2020. Both the judgment and memorandum of decision were immediately transmitted by the Bankruptcy Noticing Center on March 30, 2020,

---

[1] The Court is taking judicial notice of the contents of this adversary proceeding docket and case records; they are public records. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp*., 605 F.2d 1169, 1171-72 (10th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it); *United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017) (stating that district court may properly take judicial notice of its own records).

The Court is also taking judicial notice of publicly available notices, orders and information about the status of operations of this Court, the United States District Court for the Northern District of Ohio, the Ohio Supreme Court, and the State of Ohio available on public government websites. This information is both generally known within this Court's jurisdiction, and is accurately and readily available on public government websites. Fed. R. Evid. 201(b)(1) and (2). Those sources cannot reasonably be questioned as to their accuracy. Plaintiffs themselves raise this information in the Motion.

to Plaintiffs' lawyers and Defendant's lawyer by e-mail through the Court's CM/ECF electronic filing system at 1:55 p.m. (EDT). [*Id.*] [Doc. ## 47, 46]; Fed. R. Bankr. P. 5005(a)(2), 9036; LBR 5005-4. The adversary proceeding docket shows neither e-mail was bounced back as undeliverable. Both the judgment and memorandum of decision were mailed by the Bankruptcy Noticing Center on April 1, 2020, by first class mail, postage prepaid, directly to Plaintiffs and Defendant. [Doc. ## 47, 46]. The adversary proceeding docket shows the mailings were not returned as undeliverable.

After entry of judgment against Plaintiffs, neither party filed any post-trial motions for additional findings under Bankruptcy Rule 7052, to alter or amend the judgment under Bankruptcy Rule 9023, for a new trial under Bankruptcy Rule 9023, or for relief from judgment under Bankruptcy Rule 9024. *See* Fed. R. Bankr. P. 8002(b). Any such motion was due within 14 days after entry of the judgment. Fed. R. Bankr. P. 7052, 9023, 9024 and 8002(b)(1)(D). Plaintiffs electronically filed the Motion to Extend Time to File Notice of Appeal, now before the Court, 25 days after entry of the judgment, on Friday April 24, 2020. [Doc. # 50]. Defendant opposes the requested extension. [Doc. # 52].

## LAW

The Bankruptcy Rules require parties to act quickly if they are going to appeal a judgment or order. A party seeking to appeal a bankruptcy court judgment must file a notice of appeal within 14 days after entry of the judgment. Fed. R. Bankr. P. 8002(a)(1).[2] The notice of appeal must be filed with the bankruptcy court clerk. Fed. R. Bankr. P. 8003(a)(1). Alternatively, the party may ask the bankruptcy court to extend the time for filing a notice of appeal by filing a motion within that same 14-day period after entry of judgment. Fed. R. Bankr. P. 8002(d)(1)(A).[3] If neither a notice of appeal nor a motion for extension of time is filed during that 14-day period, the only alternative for filing a timely notice of appeal is to obtain an extension of the deadline by filing a motion within 21 days after the 14-day time period for appeal, provided the movant must show excusable neglect for missing the original 14-day deadlines. Fed. R. Bankr. P. 8002(d)(1)(B).

---

[2] Until 2009, when the Bankruptcy Rules were amended to set time periods in multiples of 7 days, the deadline in Rule 8002(a) for filing a notice of appeal was 10 days after entry of judgment.

[3] The provision in the Federal Rules of Bankruptcy Procedure governing extensions of time to appeal, including after expiration of the deadline, was previously found at Rule 8002(c)(2). That provision was amended and renumbered as part of the 2014 rule amendments, and is now in Rule 8002(d)(1).

3

In this case, the 14-day deadlines under Rule 8002(a)(1) and (d)(1)(A) for filing timely a notice of appeal or motion to extend time for filing a notice of appeal were April 13, 2020, the Court's judgment having been entered on March 30, 2020. Plaintiffs filed neither a notice of appeal nor a motion to extend time to file a notice of appeal by April 13, 2020. Instead they filed their Motion seeking an extension of time to file a notice of appeal on April 25, 2020, which is within the additional 21-day time period allowed if a party shows excusable neglect. Plaintiffs' Motion is timely under Rule 8002(d)(1)(B). The issue before the Court is whether they have shown excusable neglect.

The United States Supreme Court provided guidance for determining excusable neglect in the context of a missed bankruptcy court-ordered filing deadline in the now-familiar case *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993), which involved Bankruptcy Rule 9006 generally governing computing and extending time in bankruptcy matters. The Supreme Court explained that finding excusable neglect involves an equitable determination that should incorporate all relevant factors, including (i) danger of prejudice to the non-movant; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reasons for the delay, including whether it was within the reasonable control of the movant;[4] and (iv) whether the movant acted in good faith. Related principles emphasized by the Supreme Court in *Pioneer* are that: (1) the concept is an "elastic one," *id.* at 392; (2) it is not limited to omissions caused by circumstances beyond the control of the movant, *id.*; (3) inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, *id*.; and (4) clients are held accountable for the acts and omissions of their chosen counsel, *id.* at 397.

In applying its guidance to the facts in *Pioneer*, the Supreme Court relied on the lower courts' factual findings that there was no indication of prejudice to the debtor in a late claim filing, the delay was not such that it would interfere with the efficient administration of the Chapter 11

---

[4] The appellant in *Community Financial Services Bank v. Edwards (In re Edwards)*, Case No. 17-8028, 2018 WL 2717237 (B.A.P. 6th Cir. June 5, 2018), *aff'd* 748 Fed. App'x 695 (6th Cir. June 15, 2019), raised the issue whether "the reason for the delay" and "whether it was within the reasonable control of the movant" are one factor or two separate factors, and thus whether there are really four *Pioneer* factors or five *Pioneer* factors. Like this one, the *Edwards* case involved a missed deadline for filing a notice of appeal and excusable neglect under Bankruptcy Rule 8002(d). Affirming the bankruptcy court's denial of a motion for extension of time because there was no excusable neglect shown, the appellate court decided the trial court's factor enumeration does not much matter as long as both aspects of the reason advanced for missing the appeal deadline are considered.

4

case and the creditor and its counsel had acted in good faith. In evaluating the reason for the delay, the Supreme Court ultimately gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date." *Id.* at 398. Rather, in affirming the Sixth Circuit's reversal of the bankruptcy court's finding that there was no excusable neglect and denial of the motion for leave to file a late proof of claim, the Supreme Court considered "significant" that the bankruptcy court's own claims bar date notice was unusual and ambiguous. *Id.*

Although *Pioneer* dealt with the interface between excusable neglect and the allowance of a late proof of claim in a Chapter 11 bankruptcy case, courts apply *Pioneer* in other procedural contexts. Those procedural contexts include motions for extension of time to file a notice of appeal after the deadline where a finding of excusable neglect is required under both Bankruptcy Rule 8001(d)(1) and its analog in the Federal Rules of Appellate Procedure, Appellate Rule 4(a)(5)(A), Fed. R. App. P. 4(a)(5)(A); *United States v. Thompson*, 82 F.3d 700, 702 (6th Cir. 1996) (*Pioneer* applies to decisions on motions under Fed. R. App. P. 4(a)). The Sixth Circuit and the Sixth Circuit Bankruptcy Appellate Panel apply *Pioneer* in this context, as have other appellate courts. Although the relevant deadlines are 30 days under the Federal Rules of Appellate Procedure instead of the 14 days under the Bankruptcy Rules, that distinction is meaningless. The Court finds precedents under both rules equally instructive.

Many cases addressing excusable neglect in the context of late notices of appeal are unpublished decisions, presumably because the outcomes depend so heavily on specific facts. Also, lawyer guidance through published decisions is less helpful in this area because these are not the type of situations where a lawyer consults case law in advance of acting to guide conduct and client advice. Nevertheless, certain clear guiding principles emerge from this body of case law helpful to judges evaluating such situations after the fact. That many of the cases from which they emerge are unpublished thus does not lessen their importance to the decision on the Motion from this Court's perspective.

Applying *Pioneer* to requests for extension of time to file a notice of appeal on the basis of excusable neglect is a two-step analysis.

First, the court must decide whether the failure to file timely was the result of "neglect." "The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness*.'"

5

*Pioneer,* 507 U.S. at 388 (quoting Webster's Ninth New Collegiate Dictionary 791(1983) (emphasis in original)).

Then, if the court finds "neglect," it must decide whether the neglect was "excusable" based on relevant *Pioneer* factors. *Id.*, at 395. While the Supreme Court set forth an inclusive list of relevant factors in *Pioneer*, it did not give guidance on how to balance them beyond its observation that excusable neglect "is a somewhat elastic concept." *Id.*, at 392. Since then, appellate courts have developed basic principles for balancing the *Pioneer* factors. As noted by the Sixth Circuit in *United States v. Munoz*:

> The Pioneer factors 'do not carry equal weight; the excuse given for the late filing must have the greatest import. While [the others] might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry.'

605 F.3d 359, 372 (6th Cir. 2010) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)). Under Appellate Rule 4(a)(5), "the greatest weight is properly assigned to the reason for delay." *JBlanco Ent. v. Soprema Roofing and Waterproofing, Inc.*, Case No. 17-3535, 2017 WL 5634299, at *2 (6th Cir. Nov. 20, 2017) (district court's finding of no excusable neglect for filing late appeal, where counsel drafted notice but secretary did not file it, is affirmed because the trial court "properly assigned the greatest weight to the reason for the delay"); *Proctor v. Northern Lakes Community Mental Health*, 560 F. App'x 453, 459-60 (6th Cir. Jan. 23, 2014) (district court did not abuse its discretion in not combing through each *Pioneer* factor because determination of excusable neglect is elastic and not all factors carry equal weight in each case); *Prizevoits v. Indiana Bell Tel. Co,* 76 F.3d 132, 134 (7th. Cir. 1996).

This is particularly so in Rule 4(a)(5) and Rule 8001(d)(1) cases. Even though there are four *Pioneer* factors, the three factors of length of delay, prejudice to the appellee and good faith almost always favor the tardy would-be appellant. "[D]elay always will be minimal in actual if not relative terms…prejudice to the non-movant will often be negligible…[a]nd rarely in the decided cases is absence of good faith an issue." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Lowry v. McDonnell Douglas Corp.,* 211 F.3d at 463). The Seventh Circuit stated simply in *Prizevoits,* 76 F.3d at 134, that "[w]e do not think it can make a difference that no harm to the appellee has been shown." The reason that the other *Pioneer* factors are discounted in significance and weight in this procedural context derives from the clear and

6

immutable deadlines of the rules of procedure at issue, in contrast to the vague court-created notice of and deadline for filing a proof of claim at issue in *Pioneer*. By their terms, the appellate rules cabin the length of the delay to 21 or 30 days after the appeal deadline, unlike potential lengthy delays under Rule 60(b) or in filing proofs of claim, for example. As a result of the necessarily relatively short delay period, prejudice to the potential appellee and good faith are generally not at issue. *Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hongjun Sun (In re Hongjun Sun)*, 323 B.R. 561, 564-65 (Bankr. E.D.N.Y. 2005). *Cf. In re Jackson*, 585 B.R. 410, 420-21 (B.A.P. 6th Cir. 2018) (in case holding that 14-day time limit imposed by statute conferring appellate jurisdiction on district courts and bankruptcy appellate panels is jurisdictional, court notes that rigid enforcement of the strict and quick appeals deadlines promotes the primary policies behind the Bankruptcy Code). And so it is in this case. Defendant has not disputed Plaintiffs' conclusory assertions that the delay is minimal, no prejudice accrued or will accrue to Defendant from the missed deadline and Plaintiffs have acted in good faith. The Court so finds. The crux of the Motion is whether the Otts have shown neglect and the reason for the delay, including whether it was in their reasonable control.

## ANALYSIS

A. Plaintiffs' Reason for Delay

Plaintiffs cloak the reason for the missed deadlines in the COVID-19 pandemic. The following paragraph of the Motion explains their reason for the delay:

> Plaintiffs are represented by two attorneys, Timothy Walerius (Walerius) and Stephen Hartman (Hartman). In March issues regarding the COVID-19 virus were of significant concern. The federal government and the State of Ohio Governor issued stay at home orders and requested that individuals self-quarantine in anticipation of a pandemic. Walerius is at high risk regarding the virus. His wife is a nurse who works at a local hospital. This has created significant stress in managing homelife and work. Hartman had several of their attorneys present in family court when a local attorney who was present with a flu like symptoms. The attorney passed away just a few days later from COVID-19.[5] The risk to health and safety

---

[5] The Court is well-familiar with these sad and difficult circumstances. The attorney in question was a debtor in this Court in which a motion by the United States Trustee's office to dismiss his Chapter 7 case had most recently been set for evidentiary hearing to occur on April 1, 2020. *In re Wagoner*, Case No. 18-33992, United States Bankruptcy Court for the Northern District of Ohio, Western Division, [Doc. # 44]. As with all other then-pending evidentiary matters in this Court the hearing date was *sua sponte* vacated on March 18, 2020, and continued to further order of the court. *Id*. [Doc. # 46]. As shown by the suggestion of death filed on March 25, 2020, well-before the Court's

7

became paramount to both Walerius and at Hartman's firm. Also, as a result of this unprecedented situation State Courts stayed all time deadlines for cases in the court system. Hartman's practice in Federal Court had all of his cases put on hold with little or no action taking place. Walerius for all practical purposes shut his practice down and closed his practice and Hartman's firm closed completely. Both offices remain in the same situation as of the time of this motion. *Both Walerius and Hartman believed that the time to file a Notice of Appeal had been tolled or stayed until courts reopened and resumed normal business.* Plaintiffs contacted Walerius and expressed an interest in ordering a transcript. On or about April 21 Walerius, contacted the court bailiff and inquired how to order a transcript. In the course of the conversation Walerius inquired how the bailiff liked the slow time in the courthouse. She made a statement to the effect that it was not slow it was business as usual. This prompted Walerius to begin searching whether the time for filing an Appeal had in fact been tolled or stayed. Upon learning that it had not he immediately researched and drafted this Motion For Extension of Time to file a Notice of Appeal.

[Doc. # 50, pp. 5-6]. (Emphasis added) (footnote 5 inserted by the Court). The Court accepts the facts stated as true, including the timing and substance of the conversation with court staff, which is accurate. The Court appreciates the straightforward candor of counsel. Although disputing the proper conclusion from these facts, Defendant does not dispute them either. As a result, the Court does not need to hold a hearing or take evidence on the Motion. *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006) (no hearing necessary to decide a discretionary motion under Fed. R. App. P. 4(a)(5) where the facts asserted by appellant were presumed to be true); *United States v. Douglas*, 746 F. App'x. 465, 468 (6th Cir. August 17, 2018) (same).

    B.  <u>Status of Courts' and State of Ohio's Operations</u>

        Plaintiffs' reason for delay raises the status of various courts' operations, most directly this one, from March 30 through April 13, 2020, as the time period relevant to the Motion. The matters that serve as the background for the incorrect assumption made by Plaintiffs' lawyers that deadlines in bankruptcy court were somehow stayed throughout some undefined period of time

---

March 30 judgment in this case, the debtor in that case died on March 18, 2020. *Id.* [Doc. # 49]. The motion was immediately withdrawn, *id.* [Doc. # 48], the Court entered the late debtor's discharge and, on March 31, 2020, his case was closed, [Doc. # 52]. While Plaintiffs raise these general circumstances, they also exemplify the way this court and practitioners therein continued to do business largely unabated, except for the conduct of trials and evidentiary hearings, throughout this time period and even around the sad death of this debtor.

8

are of public record.

    1.  <u>Bankruptcy Court</u>

Both of Plaintiffs' lawyers are generally known to this Court as experienced litigators. Although neither regularly practices in this bankruptcy court, both lawyers are registered users of the court's CM/ECF electronic filing, service and noticing system, as they must be to file and receive documents. LBR 5005-4. There is a link to access directly the CM/ECF filing system on the front page of the court's website. UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF OHIO, https://www.ohnb.uscourts.gov.

Local Bankruptcy Rule 5005-4 adopts electronic filing, service and noticing[6] protocols as set forth in this Court's separate Electronic Case Filing (ECF) Administrative Procedures Manual[7] ("APM"), which is available on the court's website as the first item under the tab called ECF and Case Info. Section I.A.2. on page 1 of the APM states: "**Mandatory ECF**. Unless otherwise ordered by the Court, ECF is mandatory for all attorneys…" APM, at p.1 (emphasis in original). In turn, under the heading **II. ELECTRONIC FILING AND SERVICE FOF DOCUMENTS/ A. Filing/1. Requirements**, the APM states that "[a]ll petitions, motions, memoranda of law, or other pleadings and documents to be filed with the Court in connection with a case assigned to the ECF system shall be electronically filed on the system." APM, § II.A.1. (emphasis in original). That electronic filing requirement includes notices of appeal. *Cf*. APM, § III.A. There are limited exceptions to the requirement of electronic filing of documents by registered users of the system. *Id*. None of them apply here, although if counsels' equipment was temporarily inoperable a paper filing would have been permitted and facilitated. APM, § II.C.2. There is, however, no suggestion that either of Plaintiffs' lawyers' basic computer equipment, e-mail, software systems and internet connections were inoperable or unavailable to them for use from March 30 to April 13. *See* APM, § I.B.2., p. 4. Except for the trial exhibits submitted manually to the court, [*see* Doc. # 35, § II.3, p. 2], all filings in this adversary proceeding were electronic.

---

[6] **Notice of Electronic Filing.** Upon electronic filing of a document, the ECF system will generate a Notice of Electronic Filing, which will be automatically served electronically by the system on all parties who appear on the current Electronic Mail Notice List within that case. This notification will advise the parties of the filing of the document, but the parties will be required to access the ECF system to read the actual document that was filed. Electronic Case Filing (ECF) Administrative Procedures Manual, § II.D.2.

[7] https://www.ohnb.uscourts.gov/file-list/administrative-procedures-manual.

9

This bankruptcy court, as all courts did, took specific steps to address the impact of the COVID-19 pandemic on its operations and notified registered CM/ECF Users and the general public about them. All in all, external operational changes were minimal, indeed irrelevant insofar as the filing of a notice of appeal and the Motion in this adversary proceeding. Bankruptcy court business in this district carried on largely unabated. The exceptions were the individual continuance of trials and other evidentiary proceedings and the transition of all other matters to telephonic hearings, which have nothing to do with electronically filing a notice of appeal. Filings and processing of filings continued and have continued, with the only external document filing impacts to unrepresented persons. At no time from March 30 to April 13 did the court's CM/ECF filing system shut down or become inoperable. Rather, from March 30 to April 13 the court and clerk's office staff were doing their jobs and fully available to answer telephone inquiries. When Walerius eventually called the bankruptcy court clerk's office, the phone was answered and his questions were addressed. All registered CM/ECF Users, including both Plaintiffs' lawyers and Defendant's lawyer, and the general public were notified of the limited changes in external operations that occurred.

Eighteen days before the March 30 judgment was entered in this case, on Thursday March 12, 2020, the Court issued a document titled "**NOTICE TO ALL LITIGANTS AND LAWYERS WITH MATTERS IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF OHIO**." (Emphasis original) ("Notice to All Litigants"). It was sent by blast e-mail on March 12, 2020, to all registered CM/ECF users, including Plaintiffs' lawyers and Defendant's lawyer. It was also posted (and is still posted) as a link on the court's website under News and Announcements at the date 03/12/20 and the document title.[8] When it was posted and through the March 30 to April 13 time period relevant to the Motion, the title and link appeared on the front page of the court's website. The court's complete Notice to All Litigants states as follows:

> The United States Bankruptcy Court for the Northern District of Ohio has evaluated ongoing court operations in light of the state of emergency in the state of Ohio declared by Governor Mike DeWine in Executive Order 2020-01D issued on March 9, 2020. Like all organizations, businesses and individuals, we are trying to balance the developing public health concerns of our employees and the general public

---

[8] https://www.ohnb.uscourts.gov/news-and-announcements/

10

against ongoing operational requirements, in our case those of a high-volume trial court.

*Unless and until notified otherwise* in general or by a Judge in a specific matter or set of matters, *we remain open to accept filings* and conduct scheduled hearings and Court appearances. We are nevertheless mindful of the public health concerns raised by the by the COVID-19 disease and the SARS-CoV-2 virus that causes it. Lawyers, their clients and litigants must carefully monitor and evaluate their own health situations for the well-publicized disease symptoms. The Court strongly encourages the filing of requests for continuances in situations of any health concern, also being careful with privacy concerns in making any such request to the Court.

Please do not hesitate to bring any concerns or questions about a particular matter or situation to the attention of appropriate Court staff, including to determine whether a personal appearance is required or another reasonable accommodation and alternative to requesting a continuance might be possible under the circumstances.

March 12, 2020

https://www.ohnb.uscourts.gov/sites/default/files/news-and-announcements/coronavirus-notice-ohnb.pdf   (Emphasis added).

Following up on the March 12, 2020, Notice to All Litigants and also before the judgment in this case was entered on March 30, this Court entered on March 23, 2020, two general orders to address its operating circumstances in light of the COVID-19 pandemic. General Order No. 20-02[9] and General Order No. 20-03.[10] They were superseded on May 4, 2020, to extend their duration, Amended General Order No. 20-02[11] and Amended General Order No. 20-03,[12] but the two initial General Order Nos. 20-02 and 20-03 were in effect at all times relevant to the Motion. When they were entered, the link to them appeared at the top of the front page of the court's website in a yellow box setting it apart from other content under the heading Court Offices Closed to the Public Until Further Notice in red large font letters. When General Order No. 20-02 and General Order No. 20-03 were entered on March 23, 2020, and at all times relevant to the Motion,

---

[9] https://www.ohnb.uscourts.gov/general-orders/temporary-modification-requirement-obtain-original-signatures-persons-electronic
[10] https://www.ohnb.uscourts.gov/general-orders/temporary-filing-procedures
[11] https://www.ohnb.uscourts.gov/general-orders/temporary-modification-requirement-obtain-original-signatures-persons-electronic-0
[12] https://www.ohnb.uscourts.gov/general-orders/temporary-filing-procedures-0

they also appeared on the front page of the court website under the News and Announcements heading. There was also (and still is) a separate link to each of them under the News and Announcement window[13] on the court's website. Those general orders are also listed on the Court's General Orders window.[14]

In addition to conspicuously posting General Order No. 20-02 and General Order No. 20-03 on the court's website, on March 23, 2020, the Clerk sent a blast e-mail to all registered CM/ECF users with a link to each of the orders attached. General Order No. 20-03 was also supplemented with a separate public notice from the Clerk, titled **PUBLIC NOTICE OF TEMPORARY FILING PROCEDURES AND CLOSING OF DIVISIONAL OFFICES TO THE GENERAL PUBLIC**. (emphasis original) ("Filing Procedures Notice"). The first two sentences of the Filing Procedures Notice, as follows, contain a link to the General Order No. 20-03 and are relevant to the Motion:

> Pursuant to General Order 20-03 Temporary Filing Procedures, the courthouses and intake desks are CLOSED and no face-to-face assistance is available until further notice.
>
> Registered Case Management/Electronic Case Filing (CM/ECF) users must continue to file electronically.

https://www.ohnb.uscourts.gov/news/public-notice-temporary-filing-procedures-and-closing-divisional-offices-general-public.   It was issued via   blast e-mail to registered CM/ECF users on March 23, 2020, and posted (and still is) on the court's website under News and Announcements. When posted, it appeared on the front page of the News and Announcements column.   It remains posted under the News and Announcements window.

The court's General Order No. 20-02 is titled "Temporary Modification of Requirement to Obtain Original Signatures From Persons for Electronic Filings." Notwithstanding mandatory electronic filing for lawyers, some documents filed with the court still require contemporaneous original signatures, mostly by individual debtors. General Order No. 20-02 modified those procedures, only, in recognition that lawyers would have a hard time physically meeting with their clients. It modifies only one deadline, that being this court's requirement in its APM that an

---

[13]  https://www.ohnb.uscourts.gov/news-and-announcements/
[14]  https://www.ohnb.uscourts.gov/judges-info/general-orders

12

original signature be obtained on a debtor's Signature Declaration Form required at case opening. Instead of requiring the document with the original signature to be filed together with a debtor's bankruptcy petition, the court permitted counsel to file the document with a debtor's original signature up to 21 days after commencement of the case. This change allowed time for the "wet signature" process and requirement to be implemented through first class mail instead of by in-person meeting. This General Order No. 20-02 does not apply and is irrelevant to a notice of appeal or motion for extension of time to file a notice of appeal because no represented party signature, original or otherwise, is required on either filing.

The court's General Order No. 20-03 is titled "Temporary Filing Procedures." It supplements General Order No. 20-02. It notifies practitioners, litigants and the public that all divisional offices, including intake desks, are closed to the general public and that no document filings or fee payments will be accepted over-the-counter. It sets forth alternative filing and payment procedures for persons not represented by counsel and those permitted or required under the APM to file documents manually. Of significance to the Motion, this court's General Order No. 20-03 states the following:

> ● "While Clerk's Office personnel cannot provide legal advice, staff will remain available by telephone from 9:00 a.m. to 4:00 p.m. to answer questions about filing and other court procedures." (General Order No. 20-03, ¶ 1, p. 1).
> ● "Registered CM/ECF users must continue to use the CM/ECF electronic filing system to file documents and Pay.gov to make fee payments." (General Order No. 20-03, ¶ 2, p. 2).

As directed in both general orders, the Clerk immediately provided notice of them and "of the closing of court facilities and the intake desks." As explained above, both were posted prominently on the home page of the court website during the time period relevant to the Motion. In addition, the Clerk directly notified registered CM/ECF users, including both of Plaintiffs' lawyers and Defendant's lawyer, of the procedural orders by blast e-mail.

2. Federal District Court

The Motion states that one of Plaintiffs' lawyers' "practice in Federal Court had all of his cases put on hold with little or no action taking place." [Doc. # 50, p.6]. The court presumes the reference to Federal Court is to the United States District Court for the Northern District of Ohio, Western Division, in Toledo, ("district court"), of which this court is a unit, 28 U.S.C. § 151, and

13

with which this court shares occupancy of a courthouse. Like the bankruptcy court, the district court took specific steps to address the impact of the COVID-19 pandemic on its operations and to tell litigants, lawyers and the general public about them. Suffice to say that because of the district court's need to conduct jury trials, a need the bankruptcy court does not share except in the rarest of circumstances, its operational restrictions were both more difficult and more substantial. Nevertheless, the district court's operational changes and limitations had little to do with operations in this court, including specifically ongoing filings, which continued unabated in both courts. Ultimately, the impact of the district court's COVID-19 operational limitations on this bankruptcy court has been limited to physical closure to the public of co-occupied court buildings, including the courthouse in Toledo, which occurred on March 23, 2020.

Specifically, the district court entered two general orders that affected its operations during the March 30 to April 13 period relevant to the Motion. On March 16, 2020, the district court entered its General Order No. 2020-05 titled "Coronavirus (COVID-19) Public Emergency" and dated March 11, 2020. It extended through May 1, 2020. When it was issued, blast notice of it was given by the district court Clerk and it was posted in a conspicuous spot on the front page of the district court's public website. UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, https://www.ohnd.uscourts.gov.  It is no longer available on the district court's website because it was later superseded. A copy is attached as Appendix 1.

The district court's General Order No. 20-05 order postpones all jury trials and various other criminal proceedings, grand jury sessions, and mass gatherings "other than court proceedings." It provides that judges may conduct criminal pretrial proceedings and civil pretrial proceedings by video or telephone, notes that intake desks will remain open for filings and, significantly: "Electronic filings may still be made through the CM/ECF system." N.D. Ohio District Court General Order No. 20-05, ¶ 7. More importantly with respect to Plaintiffs' Attorney Hartman's Statement in the Motion, "[t]he public is encouraged to continue utilizing Court services while following all applicable public health guidelines." *Id.* Nothing in district court General Order No. 20-05 has anything to do with or says anything about bankruptcy court operations. Moreover, district court General Order No. 20-05 says nothing about staying filing deadlines in that or any other court, including bankruptcy court.

By March 23, 2020, the week before the judgment was entered on March 30, 2020, the

14

district court entered its Amended General Order No. 20-05, to account for Ohio Governor Mike DeWine's Stay at Home Order. District Court Amended General Order No. 20-05 directly impacted bankruptcy court operations because it closed all courthouses in the Northern District of Ohio to the general public, including the courthouse here in Toledo in which both courts operate. Otherwise, its provisions had nothing to do with and say nothing about bankruptcy court operations. Of relevance, however, it continued to note that "[E]lectronic filings may still be made through the CM/ECF system," while setting up alternative filing options for those without access to CM/ECF. District court Amended General Order No. 20-05 addresses only one deadline, that being a criminal defendant's right to a speedy trial. The district court gave immediate blast e-mail notice of Amended General Order No. 20-05 to all practitioners. It, too, appeared in a conspicuous place on the front page of the district court's public website. It is no longer available on the district court's website because it was later superseded. A copy is attached as Appendix 2. District court Amended General Order No. 20-05 extended this period through May 1, 2020. It was the district court general order in effect during the March 30 to April 13 time period relevant to the Motion.

The district court also entered General Order No. 20-06 on March 30, 2020, the date of the judgment in this case. Its sole purpose was to address Congress' authorization in The CARES Act for district court use of video and telephone proceedings in certain criminal proceedings. When it was issued, the district court Clerk gave immediate blast notice of General Order No. 20-06 and it was posted in a conspicuous spot on the front page of the district court's public website, where it remains. District Court General Order No. 20-06 has nothing to do with and does not address bankruptcy court filing deadlines, practices or operations.

Apart from any communications issued in specific matters, about which this court has no knowledge or information, district court General Order No. 20-05, Amended General Order No. 20-05 and General Order No. 20-06 are the only general district-wide communications about operations in light of the COVID-19 pandemic that occurred before or were effective during the March 30 to April 13 time period relevant to the Motion.

    3.  <u>State Court</u>

The Motion states that "as a result of this unprecedented situation State Courts stayed all time deadlines for cases in the court system." [Doc. # 50, p. 6]. The court presumes the reference

15

to State Courts is to the state courts of Ohio.

On March 27, 2020, the Supreme Court of Ohio issued the Administrative Actions order to which the Motion refers. 03/27/2020 Administrative Actions, 2020-1166, Ohio Supreme Court ("Administrative Actions Order"). As a member of the Ohio Bar, this judge received it via an e-mail from Chief Justice Maureen O'Connor and presumes that all other members of the Ohio Bar, including Plaintiffs' lawyers and Defendant's lawyer, did as well. It appears on the Supreme Court of Ohio's website under the tab Coronavirus Resources and the heading Judicial and Administrative Orders. It is titled "In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court and Use of Technology."[15]There is also a list of Tolling Order/Frequently Asked Questions[16] ("FAQ") and a separate analysis prepared by the Supreme Court of Ohio dated April 2, 2020, called "ASSESSING IMPACT of Tolling Legislation and Supreme Court Order upon Specific Time Requirements."[17] ("Assessing Impact document") (Emphasis in original). The purpose of this document is to provide lawyers with guidance "for determining the precise impact of the tolling provisions of AM. Sub. H.B. 197 and the Supreme Court's March 27, 2020, order upon specific situations." Both the Ohio Legislature's bill and the Supreme Court's Administrative Actions Order were retroactive to March 9, 2020. Both expire on the earlier of July 30, 2020, or the date Governor's Mike DeWine's Executive Order 2020-01D (the Stay at Home Order) expires. Both were in effect during the March 30 to April 13, 2020, time period relevant to the Motion.

The sixth introductory whereas clause of the Administrative Actions Order states "it is necessary for the Court to establish a temporary measure promoting uniformity and continuity amongst the courts of Ohio…" It applies to and tolls only various Ohio rules of procedure and says nothing about any federal courts or rules of procedure. As shown by the accompanying FAQ document, the Ohio legislature's "Am. Sub. H.B. 197 'tolls only *statutorily* established' time requirements," (emphasis in original), and "applies to any civil, criminal, civil or administrative time limitations imposed by the Ohio Revised Code or the Ohio Administrative Code." FAQ at Answers to Questions 2 and 3. Both the FAQ and April 2 Assessing Impact document refer to

---

[15] https://www.supremecourt.ohio.gov/rod/docs/pdf/0/2020/2020-Ohio-1166.pdf
[16] https://www.supremecourtohio.gov/tolling/default.asp
[17] https://www.supremecourtohio.gov/coronavirus/resources/tollingAnalysis040220.pdf

16

"Federal Laws and Regulations" in directing a "local court to determine whether there are applicable federal laws or regulations that impact compliance with a time requirement." Step 4 of the Assessing Impact document's decision making tree likewise include a final directive to <u>courts</u> to consider whether "[f]ederal law or regulations may require courts to proceed with a case, or, conversely, may prohibit proceedings with the case." But nothing in any of the Ohio Supreme Court's three tolling documents--the Administrative Actions Order, the FAQ or the Assessing Impact document-- purports to affect any federal law, regulation, rule of procedure or deadline.

    4.  <u>State of Ohio</u>

The Motion states in its statement of the reason for delay that "the federal government and the Ohio State Governor issued stay at home orders and requested that individuals self-quarantine in anticipation of a pandemic." [Doc. # 50, p. 5]. Although the President of the United States declared a public health emergency and issued coronavirus guidelines, as did the Federal Centers for Disease Control, the court is not aware of any "stay at home" order issued by the federal government. As referenced in this court's General Order No. 20-03, Ohio Governor Mike DeWine declared a public health emergency by Executive Order 2020-01D[18] issued on March 14, 2020, and the Ohio Department of Health issued its Director's Stay at Home Order[19] effective March 23, 2020, which was later amended[20] and extended on April 2, 2020, to May 1, 2020, past its April 6, 2020, rescission date, to be in effect through the March 30 through April 13 time period relevant to the Motion. The court presumes the Ohio Department of Health Stay at Home and Amended Stay at Home Orders are the orders to which the Motion refers. They remain available, as is Governor DeWine's public health emergency Executive Order 2020-01D, on the Ohio Department of Health Coronavirus (COVID-19) website.   https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/public-health-orders/public-health-orders.   As the Motion states, subject to certain exceptions "all individuals currently living within the State of Ohio are ordered to stay home or at their place of residence except as allowed in this Order." Of note, however, "legal services" are within the definition of Essential Businesses and Operations as Essential Activities which persons were permitted to leave their homes to perform. Director's Stay at Home Order, ¶ 12.u., p. 7.

---

[18] https://coronavirus.ohio.gov/static/publicorders/Executive-Order-2020-01D.pdf
[19] https://coronavirus.ohio.gov/status/DirectorsOrderStayAtHome.pdf
[20] https://coronavirus.ohio.gov/status/publicorders/Directors-Stay-At-Home-Order-Amended-04-02-20.pdf

Moreover, the Stay at Home Order "does not apply to the United States government." *Id.* ¶ 10,

## C. Determination of Neglect

Under the two-step analysis established in *Pioneer*, the first step in evaluating a claim of excusable neglect is to determine whether the failure to act was the product of "neglect." *In re Bayer*, 527 B.R. 202, 211 (Bankr. E.D. Pa. 2015), *aff'd* 558 B.R. 722 (E.D. Pa. 2016).

When a lawyer misses a deadline, it might seem obvious that it resulted from "neglect" as one conventionally views that concept. But as the Supreme Court analyzed in *Pioneer*, there is a range of possible explanations for a failure to comply with a filing deadline, from being prevented from doing so by forces beyond a party's control to cases "where a party may choose to miss a deadline for a very good reason" due to inadvertence, miscalculation or negligence in between. *Pioneer*, 507 U.S. at 388. Although they do not explicitly so state in their explanation of what happened, the court can reasonably infer and so finds that Walerius and Hartman both had notice and were aware of entry of the judgment and that both knew the deadline to appeal this Court's judgment against the Otts was 14 days and not, for example, 30 days as under Fed. R. App. P. 4(a)(1). Quite simply, there would have been no basis to file the Motion if they did not know the 14-day deadlines in the first place.

Rather, the essence of the explanation for missing the deadlines is that "[b]oth Walerius and Hartman believed that the time to file a Notice of Appeal had been tolled or stayed until the courts reopened and resumed normal business." [Doc. # 50, p. 6]. This statement, which is based on a fundamentally incorrect assumption, shows that they made a decision not to act in the 14 days after the judgment, either to file a notice of appeal or to seek an extension to do so, because they considered it and concluded they did not have to act. There is no indication that they could not have or were prevented from filing the notice of appeal, as the very filing of the Motion shows. Instead, the background of COVID-19 against which the deadline was missed forms the basis for their incorrect conclusion that the deadlines were tolled.

Where a decision not to act is made, there is no neglect, and the Court so finds here. *Wilson v. Moss (In re Wilson)*, C/A No. 10-01218-HB, Adv. Pro. No. 14-80054-HB, 2015 WL 3528226, at *2 (Bankr. D.S.C. June 3, 2015); *see In re Benefit Corner, LLC,* Case No. 16-11027, 2019 WL 7498664, at *6 (Bankr. M.D.N.C. Dec. 31, 2019); *Brodie v. Gloucester Twp.,* 531 F. App'x. 234 (3d Cir. Jul. 19, 2013); *see Lee v. Toyota Motor Sales, U.S.A., Inc.*, No. 96-2337, 1997 WL 256976,

18

at **2-3 (E.D. Pa. May 16, 1997) (conscious decision not to respond to motion based on interpretation of court handbook in contravention of local rules not excusable neglect under Rule 60(b)).

This is not a situation where, as *Pioneer* defines "neglect," 507 U.S. at 388 (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)),   Walerius and Hartman gave little or no attention or respect to the matter or left it undone or unattended to through carelessness. As the bankruptcy court in *In re Bayer* observed, "whether Gigliotti's [counsel's] decision or his reasoning coming to that decision [not to file a notice of appeal] was reasonable or unreasonable, correct or incorrect, competent or negligent, consistent or inconsistent with his obligations … is beside the point." 527 B.R. at 211.

D. <u>Determination of Excusable Neglect</u>

In the absence of a finding of "neglect" the court need not address whether it was "excusable" to miss the 14-day deadlines for filing a notice of appeal or to request an extension of time to do so. The Court will nevertheless do so for completeness. Also, some courts and cases are fuzzy on whether they have engaged specifically in a two-step analysis. Rather, they just find excusable neglect or no excusable neglect.

As explained above, and in harmony with *Munoz* and other Sixth Circuit precedent, the focus in the procedural context of an extension of time to file a late appeal is on the reason for delay and whether it was within the control of movant as outweighing the other *Pioneer* considerations. *Community. Fin. Servs. Bank v. Edwards (In re Edwards)*, No. 17-8028, 2018 WL 2717237, at * 6 (B.A.P. 6th Cir. 2018).   The case that Plaintiffs rely upon, *Bli Farms v. Greenstone Farm Credit Servs. (In re Bli Farms)*, 294 B.R. 703 (Bankr. E.D. Mich. 2003), did not ascribe more weight to the reason for delay than to the other three *Pioneer* factors, notwithstanding that the bankruptcy court found that "the filing was within counsel's control and could have been accomplished timely" even given counsel's busy schedule and preoccupation with other matters. As a result, the bankruptcy court found excusable neglect for failing to file a notice of appeal within 10 days and granted the plaintiffs' motion to extend the deadline to do so under former Rule 8002(c)(2). The Court does not find *In re Bli Farms* persuasive. The bankruptcy court's interpretation in *In re Bli Farms* of the *Pioneer* factors does not hold up under subsequent weighing by the Sixth Circuit and the Sixth Circuit Bankruptcy Appellate Panel of the *Pioneer* factors in

19

analyzing excusable neglect determinations under Bankruptcy Rule 8002(d)(1) and Appellate Rule 4(a)(5).

While the concept of excusable neglect is an elastic, equitable determination under *Pioneer*, as Plaintiffs emphasize, the Sixth Circuit continues post-*Pioneer* to hold it to be "a strict standard that is met only in extraordinary cases." *Nicholson*, 467 F.3d at 526. Moreover, as the Supreme Court mused in dicta in *Pioneer*, the Sixth Circuit continues to emphasize that ignorance of or "mistakes in construing the rules" for determining the time for an appeal "do not usually constitute excusable neglect." *Id.* (citing *Pioneer*, 507 U.S. at 392)**.** And so it is here.

The reason that Plaintiffs missed the 14-day filing deadlines is two lawyers' wrong legal conclusion that the deadlines in Bankruptcy Rule 8002(a)(1) and (d)(1)(A) had been tolled because of the COVID-19 pandemic for some indefinite period of time "until courts reopened and resumed normal business." The Court acknowledges the descriptive background of the personal stress of the COVID-19 impact on both lawyers and the closure of their law offices, but finds the situation common to the many other local practitioners in this court who have continued to file documents and meet deadlines through the pandemic. There is no indication that they were prevented by any of it from one or both of them undertaking, between March 30 and April 13, the simple of act of preparing a Notice of Appeal form or motion for extension of time and electronically filing it with this court. In *Pioneer* the Supreme Court explicitly gave little weight to upheaval in counsel's law practice as a cognizable basis for missing the proof of claim filing deadline. *Pioneer,* 507 U.S. at 398.

The referenced disquiet of the family court appearance and ultimate death on March 18 of a local lawyer who was, it turns out, also a debtor with ongoing matters set to proceed in this court, occurred well before the March 30 electronic entry and service of the final judgment in this adversary proceeding. Thankfully there is no indication in Plaintiffs' explanation of what happened of sudden or debilitating illness occurring prior to or through April 13 of either lawyer or their loved ones. But there is also no indication of a lack of basic computer and internet access by either or both lawyers notwithstanding that they were no longer working from their law offices. Indeed, under conditions described as ongoing as of the April 24 filing date of the Motion, a thoroughly researched and thoughtfully written Motion and supporting brief, along with the prepared 2- page

20

Notice of Appeal and Statement of Election form, [Doc. # 50, App'x. A], were readily electronically filed with this Court, just as the Court's judgment was readily electronically issued and served on March 30. *See Isert v. Ford Motor Co.,* 461 F.3d 756, 758 (6th Cir. 2006) ("would-be appellants must complete two modest tasks" to take an appeal: they must give notice of it and they must give notice in time); *In re Nat'l Century Enterprises, Inc.,* Case No. 2:06-cv-883, 2007 WL 912216, at *5-6 (S.D. Ohio March 23, 2007) (quoting bankruptcy court's finding about the simple nature and contents of a notice of appeal in affirming decision that there was no excusable neglect in missed appeal deadline). The only identified and known telephone contact with court staff about the appeal was promptly and routinely engaged by court staff but also did not occur until April 21.

The Court has set forth in detail the ongoing status of court operations and formal communication of them to lawyers and the public in order to evaluate whether there were rules, general orders or communications that were misleading to counsel. This evaluation is important because of the Supreme Court's focus in *Pioneer* on the misleading nature of the bankruptcy court's own notice as the foundation of excusable neglect beyond the upheaval in counsel's office that was afforded little weight in its excusable neglect analysis.

The recitation of court operational changes and public notifications of them shows no basis in any rule, general order or communication from, most importantly, this Court, but also from the federal district court, the Ohio Supreme Court or the State of Ohio, all of which are raised by counsel, from which any assumption could reasonably be drawn under the circumstances that (1) jurisdictional or any other deadlines under the Bankruptcy Rules or Bankruptcy Code were indefinitely tolled or (2) this court was ever shut-down for routine and ongoing acceptance and processing of electronic filings. As the Court's recitation demonstrates, bankruptcy court operational changes as a result of the pandemic have been limited. Except for delaying trials and other evidentiary hearings and the closure of court buildings to the general public, thus impacting old-fashioned over-the -counter filings, bankruptcy court business has continued unabated, as it must, even with practitioners and court staff working from home.

This Court's limited COVID-19 operational changes did not affect any aspect of the electronic filing process as involved in a lawyer filing a notice of appeal. Its CM/ECF electronic filing system has never been out of commission during the COVID-19 pandemic and specifically

not between March 30 and April 13. The court's public communications and general orders, of which both lawyers were notified by e-mail as registered CM/ECF users and which were also publicly and conspicuously posted on the court's website, instead emphasized that registered CM/ECF users were to continue filing documents electronically and to call court staff if they had questions. That started with this Court's March 12 Notice to All Litigants. It is quoted in full above because it set the tone from the beginning of the pandemic, with the statement that "[u]nless and until notified otherwise in general or by a Judge in a specific matter or set of matters, we remain open to accept filings and conduct scheduled hearings." As lawyers with a significant pending matter in bankruptcy court in which a decision was awaited, this Notice should have been of singular importance. This message and tone continued with the bankruptcy court's two General Order Nos. 20-02 and 20-03 entered by the Court on March 23.

Attorney Hartman refers to the status of federal district court operations as a basis for his assumption that Bankruptcy Rule deadlines were tolled. The only impact on bankruptcy court of the federal district court's general orders and communications, effective up to and during the March 30 to April 13 time period at issue in the Motion, was the closure of the courthouse to the general public with Amended General Order No. 20-05 entered on March 23. While in-person conduct of   proceedings in federal district court stopped effective March 16, 2020, a much more daunting problem there than in bankruptcy court because of the impact on jury trials and criminal matters generally, apart from building closures, nothing in the federal district court's relevant general orders or communications affect or purported to affect bankruptcy court operations, filings or deadlines. There is no ambiguity in any of them about their applicability. Moreover, the tone and directives of the district court's general orders and public communication also emphasized the ongoing availability and expectation that electronic filings continue unabated, as did this bankruptcy court's general orders and public communications.

As also referenced in counsels' explanation for assuming the appeal deadline was tolled by the pandemic, the Ohio Supreme Court entered on March 27, retroactive to March 9, an Administrative Actions Order, complementing certain state legislation, that tolled deadlines under various Ohio rules of procedure for a defined period. Chief Justice Maureen O'Connor circulated the Administrative Actions Order to all lawyers licensed to practice in this state. There is nothing in the Administrative Actions Order, Chief Justice O'Connor's transmission of it or the referenced

22

Ohio legislation about tolling federal rule or statutory deadlines generally or bankruptcy rule or Bankruptcy Code deadlines specifically. Nor could they. There is no ambiguity in these Ohio state court sources about their applicability. The noticeable contrasting absence of any similar order or communication tolling deadlines from this or the federal district court is telling. And unlike the Ohio Supreme Court, this Court cannot find the authority to do so generally in either the Bankruptcy Rules, the Bankruptcy Code or other federal rules or statutes.

The Stay at Home directives and orders of Ohio Governor Mike DeWine and the Ohio Department of Health referenced by counsel, first entered and effective March 23 and ultimately continuing past April 13, unquestionably drove the responses of the referenced courts, litigants and practitioners to the COVID-19 pandemic. That includes closure of counsels' law offices and court buildings to the general public. Except for the Ohio Supreme Court's tolling Administrative Actions Order dated March 27, 2020, March 23 was also the fulcrum date around which court operational actions and changes pivoted. That was, however, a full week before the March 30 electronic entry of the judgment against Plaintiffs, the very fact of which should have been revelatory to counsel of this Court's ongoing operations and expectations notwithstanding the pandemic. Explicitly, the Director's Stay at Home order "does not apply to the United States government."

Counsels' explanation of the reason for their delay coalesces around two problems that neither the Supreme Court in *Pioneer* nor other courts generally consider to be excusable neglect: ignorance of or mistakes construing rules and lawyer law office upheaval. *See Deym v. Von Fragstein*, 127 F.3d 1102 (Table) (6th Cir. Oct. 16, 1997) (majority reverses district court decision allowing late notice of appeal under Rule 4(a)(5) where a new law clerk in counsel's office calculated the appeal time from the wrong order and counsel had suffered "loss of a long-term paralegal assistant, illness of an entrusted associate, and an extraordinary personal workload"). The fundamental logic behind these outcomes is that lawyers are presumed to know the bankruptcy and local rules and requirements of practice, and are responsible for ascertaining that all who work on a file are also aware of them, especially when filing deadlines are involved. *See Auto Specialties Manuf. Co. v. Sachs (In re Auto Specialties Manuf. Co.)*, 133 B.R. 384, 392 (Bankr. W.D. Mich. 1991) (quoting *In re Earl Roggenbuck Farms, Inc.*, 51 B.R. 913, 920 (Bankr. E.D. Mich 1985)).

23

Sixth Circuit and Sixth Circuit Bankruptcy Appellate Panel cases finding that misunderstanding or misreading of rules, orders and statues do not make neglect excusable include: *In re Mayville Feed & Grain, Inc.*, 996 F.2d 1215 (Table) (6th Cir. June 17, 2993) (party has independent duty to keep informed of case status); *Duncan v. Washington*, 25 F.3d 1047 (Table) (6th Cir. 1994) (per curiam) (no reasonable justification for lawyer's failure to ascertain whether client wished to pursue and appeal and "misunderstanding of the rule in this case was not excusable"); *HLM II, Inc. v. Ginley (In re HML II, Inc.)*, 234 B.R. 67 (B.A.P. 6th Cir. 1999) ("an unintentional oversight occasioned by its attorney's unfamiliarity with bankruptcy procedure" did not excused missed appeal deadline because, after *Pioneer*, misreading a rule or statute does not meet that standard); *Nicholson*, 467 F.3d at 527 (citing *Pioneer*, pro se party's uncertainty about whether appeal period was 30 days does not excuse failure to file timely notice of appeal under Rule 4(a)(5)); *Douglas v. Swing*, 482 F. App'x. 988, 989 (6th Cir. October 12, 2012) (under Rule 4(a)(5), miscalculation of the filing deadline did not constitute either good cause or excusable neglect for a late appeal, the latter being "a strict standard that will be found only in extraordinary cases"); *In re Edwards*, Case No. 17-8028, 2018 WL 2717237 (B.A.P. 6th Cir. June 5, 2018), *aff'd* 748 F. App'x. 695 (6th Cir. January 15, 2019) (quoting *Nicolson v. Warren,* "[i]gnorance of or 'mistakes in construing the rules,'" even by those without counsel, is not necessarily excusable); *Proctor*, 560 F. App'x. at 460 (pro se party's ignorance of the rules and inability to pay filing fee are not excusable neglect under rule 4(a)(5)). *Cf. McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir. 2002) (interpreting Rule 60(b)(1), "an attorney's inaction or strategic error based on a misreading of applicable law cannot be deemed excusable neglect'"). Generally, cases from other courts of appeal are not to the contrary on this point.

Additionally, Sixth Circuit and Sixth Circuit Bankruptcy Appellate Panel cases finding that law practice upheaval generally does not amount to excusable include: *In re Hess,* 209 B.R. 79 (B.A.P. 6th Cir. 1997) (delay of mail, unavailability of clients and "other issues associated with trying to run a practice of law" do not excuse missed appeal deadline); *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 268 (B.A.P. 6th Cir. 2000) (that person in law office responsible for mail was seriously ill does not excuse missed appeal deadline because office problems are not sufficient cause for the failure); *JBlanco Enterprises*, No.17-3535, 2017 WL 5634299, at *2 (6th Cir. 2017) (under Rule 4(a)(5), secretary's failure to file notice of appeal prepared by counsel is not excusable

neglect). *But see Allied Domecq Retailing USA v. Schultz (In re Schultz),* 254 B.R. 149, 154 (B.A.P. 6th Cir. 2000) (distinguishing "law office upheaval" line of cases, court found excusable neglect under extraordinary circumstances in missing 10-day appeal deadline where debtor's spouse became suddenly seriously ill, was hospitalized and counsel was her sole caregiver). Generally, cases from other courts of appeal are not to the contrary on this point.

Based on the applicable facts and case law, the Court finds that Plaintiffs have not shown excusable neglect justifying an extension of the time to appeal under Bankruptcy Rule 8002(d)(1). Counsel both made the wrong assumption that the filing deadlines for the notice of appeal or a timely motion for an extension of time to appeal were indefinitely tolled by the COVID-19 pandemic. As the detailed recitation of court and other public responses to the pandemic show, there is no reasonable basis upon which that conclusion could be drawn, either from the limited operational changes that occurred in this Court or from the public and targeted communication of them. To the contrary, the changes made in this Court, specifically adjournment of all evidentiary proceedings and closure of courthouse access to the general public, did not affect the timing or act of electronic filing of a notice of appeal or a motion for extension of time to appeal. This Court's CM/ECF electronic filing system was not impacted by or shut down during the COVID-19 public health emergency. Court staff continued to work unabated throughout the time period at issue and to be available by telephone to answer questions, as occurred. The physical dislocation of counsel and the stress they experienced from the circumstances they describe are understandable but not unique among court staff and all practitioners who have carried on throughout in this high volume trial court. The described potential exposure of one of the two lawyers in another court to a debtor in this Court (also a lawyer) occurred weeks before the judgment in this case was electronically entered by this Court on March 30, 2020. Nor have the uncontested stress and physical dislocation as the background against which the missed deadline occurred, while dramatic, been shown to have impacted the simple task of electronically filing the notice of appeal or a motion for extension by April 13, 2020. The Court finds that both ascertaining the applicable deadlines and that there was no tolling of them, and the basic act of electronically filing a notice of appeal document were always within the reasonable control of one or both sets of Plaintiffs' lawyers to accomplish. There was no neglect, but an incorrect legal and factual conclusion ungrounded in the rules or operational practice. To the extent there was neglect, it was not excusable. This is not a close case in which

25

the other *Pioneer* factors tip the balance in Plaintiffs' favor against the weight of the reason for delay and whether it was within Plaintiffs' reasonable control to avoid it.

## <u>CONCLUSION</u>

For the reasons and based on the authorities stated above, Plaintiffs' Motion is not well taken. The Court will enter a separate judgment in accordance with this opinion denying Plaintiffs' Motion to Extend Time to File Notice of Appeal [Doc. # 50].

###

## GENERAL ORDER NO. 2020-05

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| In Re: | ) |
|  | ) |
|  | )     ORDER NO. 2020-05 |
| CORONAVIRUS (COVID-19) | ) |
| PUBLIC EMERGENCY | ) |
|  | ) |

The Governor of the State of Ohio has declared a public health emergency throughout the state in response to the spread of the coronavirus (COVID-19).

The Centers for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure to the virus and slow the spread of the disease.

NOW, THEREFORE, in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel, the United States District Court for the Northern District of Ohio hereby issues the following order effective immediately:

1.    The following events in the Northern District of Ohio, scheduled to begin before May 1, 2020, are postponed pending further order of the Court:

- All civil jury trials

- Re-entry court proceedings

- Petty Offense (CVB) proceedings

The Court may issue other orders concerning future continuances as necessary and appropriate.

2. Criminal trials will not proceed unless absolutely necessary. The Court is cognizant of the right of criminal defendants to a speedy and public trial under the Sixth Amendment, and the particular application of that right in cases involving defendants who are detained pending trial. Individual judges presiding over criminal proceedings should take such actions consistent with this order as may be lawful and appropriate to ensure the fairness of the proceedings, preserve the rights of the parties, and ensure the health and well-being of all participants.

3. Judges may conduct criminal pretrial proceedings by telephone or video conferencing where practicable.

4. Unless otherwise ordered, judges will conduct civil pretrial proceedings by telephone or video conferencing where practicable.

5. Grand juries will not meet unless absolutely necessary.

6. All mass public gatherings, other than court proceedings, are suspended. This includes, but is not limited to, group tours and visits, moot courts and mock trials, bar group meetings, seminars, and naturalization ceremonies.

7. The Clerk's Office, Pretrial Services & Probation Office, and all other Court services will be open with limited staff on the premises and remaining staff on telework status. Staff in the Clerk's Office will be available by telephone, mail will be received, and intake desks will remain open for filings. Electronic filings may still be made through the CM/ECF system. The public is encouraged to continue utilizing Court services while following all applicable public health guidelines.

8. The Court will vacate or amend this General Order no later than May 1, 2020.

**IT IS SO ORDERED.**

FOR THE COURT

Patricia A. Gaughan
Chief Judge

## AMENDED GENERAL ORDER NO. 2020-05

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| In Re: | ) |
|  | ) |
|  | )  ORDER NO. 2020-05-1 |
| CORONAVIRUS (COVID-19) | ) |
| PUBLIC EMERGENCY | ) |
|  | ) |

The President of the United States and the Governor of the State of Ohio have declared a public health emergency in response to the spread of the coronavirus (COVID-19).

The Centers for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure to the virus and slow the spread of the disease. The Governor of the State of Ohio has additionally issued a "Stay at Home" Order.

NOW, THEREFORE, in order to protect the public health, and in order to reduce the size of public gatherings and reduce unnecessary travel, the United States District Court for the Northern District of Ohio hereby issues the following order effective immediately:

ALL COURTHOUSES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, SHALL BE CLOSED TO THE PUBLIC UNTIL MAY 1, 2020. ONLY PERSONS HAVING OFFICIAL BUSINESS AUTHORIZED BY THIS GENERAL ORDER OR BY A PRESIDING JUDGE, INCLUDING CREDENTIALED MEDIA, MAY ENTER COURTHOUSE PROPERTY. THIS APPLIES TO ALL DIVISIONAL LOCATIONS.

**Akron**
John F. Seiberling Federal
Building & U.S. Courthouse
2 South Main Street
Akron, OH 44308

**Cleveland**
Carl B. Stokes U.S. Court House
801 West Superior Avenue
Cleveland, OH 44113

Howard M. Metzenbaum
U.S. Courthouse
201 Superior Avenue, East
Cleveland, OH 44114

**Toledo**
James M. Ashley and
Thomas W.L. Ashley U.S. Courthouse
1716 Spielbusch Avenue
Toledo, OH 43604

**Youngstown**
Thomas D. Lambros Federal
Building & U.S. Courthouse
125 Market Street
Youngstown, OH 44503

CIVIL CASES:

1. No jury trial will be commenced before May 1, 2020. Any trial dates currently scheduled during that period are vacated.

2. All scheduled civil matters will be conducted by telephone or videoconference unless otherwise canceled by the assigned judge. This applies to motion hearings, case management conferences, pretrial conferences, settlement conferences, and Alternative Dispute Resolution (ADR) proceedings.

CRIMINAL CASES:

Due to the Court's reduced ability to obtain an adequate spectrum of jurors and the effect of the public health recommendations on the availability of counsel and court staff to be present in the courtroom, the time period of the continuances implemented by the General Order will be excluded under Speedy Trial Act, as the Court specifically finds that the ends of justice served by ordering the continuances outweigh the interest of the public and any defendant's right to a speedy trial pursuant to 18 U.S.C. Section 3161(h)(7)(A). Accordingly,

1. No jury trial will be commenced before May 1, 2020. Any trial dates currently scheduled during that period are vacated.

2. Initial appearances, arraignments, and detention hearings will proceed and will be conducted by telephone or videoconference where practicable.

3. Criminal pretrials with defense counsel and United States attorneys may proceed, but by telephone only.

2

4. Criminal sentencings are postponed and will not proceed unless the defendant is in custody and (a) the presiding judge determines that an imposed sentence would be equal to or less than the time in which the defendant has been in pretrial custody; or (b) where the presiding judge determines that there is a liberty interest, public safety, or other case-specific compelling reason that makes an immediate sentencing necessary.

5. Change of plea hearings will not proceed. To the extent possible and with the agreement of the defendant, after filing a notice to enter an open guilty plea or plea agreement signed by the defendant and/or defense counsel, the taking of the plea of guilty and the sentencing shall be consolidated for a date after the presentence report has been prepared.

6. All grand jury proceedings are suspended until May 1, 2020, unless absolutely necessary and with the approval of the Chief Judge.

7. All in-person re-entry court sessions are suspended until May 1, 2020.

8. All petty offense (CVB) proceedings are suspended until May 1, 2020.

9. Consistent with recently implemented procedures, all detainees, upon arrival at a courthouse and before appearance in court, will undergo screening for fever and other symptoms of COVID-19 contamination. Such screening will be administered by and/or at the direction of the United States Marshals Service (USMS) or its agencies or designees. The presiding judge must be notified if the detainee exhibits risk factors and will have the discretion to order the detainee returned to the facility from which they came.

OTHER:

1. All mass public gatherings are suspended, including, but not limited to, group tours and visits, moot courts and mock trials, bar group meetings, seminars, and naturalization ceremonies.

2. All employees of the District Court are directed to telework through May 1, 2020, except when directed by their supervisors/judges to report to the courthouse to perform essential functions.

3. The Clerk's Office intake windows will be closed. Electronic filings may still be made through the CM/ECF system. For those without access to CM/ECF, documents may be submitted by mail, or in the event of an emergency, may be submitted by email to: EmergencyFiling@ohnd.uscourts.gov. All emergency filings must include an email address and phone number where the filer may be reached. Filings submitted by mail and email will be processed each business day. Mail will be received and processed each

3

business day. Clerk's Office staff will be available by telephone from 9:00 a.m. to 4:00 p.m. each business day as follows:

| | |
|---|---|
| Akron: | (330) 252-6020 |
| Cleveland: | (216) 357-7011 |
| Toledo: | (419) 213-5521 |
| Youngstown: | (330) 884-7420 |

Payments by attorneys using the CM/ECF system will be processed via credit card utilizing Pay.gov. Payments by check or money order will be accepted by mail and will be processed when received.

**Cash payments will not be accepted during this period.** Any *pro se* litigant filing a case via email who cannot secure a check or money order should submit his or her filing by mail, and the Clerk's Office will send a notice directing payment be submitted after courthouses reopen.

4. All Pretrial Services & Probation Offices will operate on skeleton crew. For information or assistance, a duty officer will be available at 216-357-7300.

The Court will vacate or amend this Amended General Order no later than May 1, 2020.

**IT IS SO ORDERED.**

FOR THE COURT

Patricia A. Gaughan
Chief Judge

4